IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

LAC HOILIEN,                         )        CV. NO.  11-00357 DAE-RLP
                                     )
            Plaintiff,               )
                                     )
    vs.                              )
                                     )
ONEWEST BANK, FSB, A                 )
FEDERAL SAVINGS BANK FKA             )
INDYMAC BANK, MORTGAGE               )
ELECTRONIC REGISTRATION              )
SYSTEMS, INC., STEWART               )
TITLE GUARANTY CO., INC.,            )
RICHMOND TITLE SERVICES,             )
INC., and DOES 1 through 20          )
inclusive,                           )
                                     )
            Defendants.              )
_____ )


ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS AND (2)
GRANTING PLAINTIFF LEAVE TO AMEND

        On April 18, 2012, the Court heard Defendants' Motion to Dismiss.

Richard E. Lehrfeld, Esq., appeared at the hearing on behalf of Plaintiff Lac

Hoilien ("Plaintiff"); David B. Rosen, Esq., appeared at the hearing on behalf of

Defendants OneWest Bank, FSB ("OneWest") and Mortgage Electronic

Registration Systems, Inc. ("MERS") (collectively, "Moving Defendants"). After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Moving Defendants' Motion to Dismiss. (Doc. # 26.)

BACKGROUND

According to the First Amended Complaint ("FAC") and documents of which the Court takes judicial notice, on or about March 9, 2007, Plaintiff Lac Hoilien ("Plaintiff") entered into a loan transaction for $520,000 with IndyMac Bank, F.S.B. ("IndyMac"), which was secured by a mortgage encumbering real property located at 95 Wilikona Place, Wailuku, HI 96793 (the "Subject Property").[1] ("RJN," Doc. # 29, Ex. C; see also "FAC," Doc. # 24 ¶¶ 9–10.) The Mortgage was recorded in the State of Hawaii Bureau of Conveyances ("Bureau" or "Bureau of Conveyances") on April 13, 2007.[2] (RJN, Ex. C.) IndyMac is listed

_____

[1] The Court notes that Plaintiff, while represented by counsel, previously filed a complaint in this Court regarding the same subject property, but voluntarily dismissed her suit on June 4, 2010. See Hoilien v. OneWest Bank, No. 10-00121, Doc. # 11. Plaintiff has also filed three other suits in this Court against mortgage lenders regarding other properties. See Hoilien v. Bank of Am., No. 10-00761, 2011 WL 3494523 (D. Haw. Aug. 10, 2011); Hoilien v. Bank of Am., No. 10-00760, 2011 WL 251831 (D. Haw. June 23, 2011); Hoilien v. Bank of Am., No. 10-00712, 2011 WL 976699 (D. Haw. Mar. 17, 2011).

[2] Defendants have submitted copies of the Mortgage, Assignment of Mortgage, Notice of Mortgagee's Intention to Foreclose Under Power of Sale, Mortgagee's Affidavit of Foreclosure Under Power of Sale, and Mortgagee's

(continued...)

on the Mortgage as the lender, and MERS is listed as the mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns." (Id.) Plaintiff alleges that she had the sole ownership interest in the Subject Property when an IndyMac representative offered to loan her money to pay off her "then existing loan of approximately $200,000.00 and provide her an additional sum of approximately $300,000.00." (FAC ¶ 7.) Plaintiff alleges that IndyMac told her that after it "paid off [her existing loan] she would receive the balance" of the $520,000 loan through an escrow account with Defendants Stewart Title Guaranty Co., Inc. ("Stewart"), and Richmond Title Services, Inc ("Richmond"), but that she never received the money. (Id. ¶ 9.)

---

[2](...continued)
Quitclaim Deed Pursuant to Power of Sale as exhibits to their Request for Judicial Notice. (Doc. # 29, Exs. C–G.) The Court takes judicial notice of those documents, which are public documents recorded in the Bureau of Conveyances. See United States v. 14.02 Acres of Land More or Less in Fresno Cnty., 547 F.3d 943, 955 (9th Cir. 2008) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) ("Although, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion, Fed. R. Civ. P. 12(d), it 'may take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment.")).

MERS assigned the Mortgage to OneWest by an Assignment of Mortgage recorded in the Bureau of Conveyances ("Bureau") on January 11, 2010. (RJN, Ex. D.) On January 11, 2010, OneWest, as mortgagee, recorded in the Bureau a Notice of Mortgagee's Intention to Foreclose Under Power of Sale. (Id., Ex. E.) On March 24, 2010, OneWest recorded in the Bureau a Mortgagee's Affidavit of Foreclosure Under Power of Sale. (Id., Ex. F.) On July 12, 2010, a Quitclaim Deed naming OneWest as grantee was recorded in the Bureau. (Id., Ex. G.)

On July 27, 2010, OneWest commenced an ejectment action in the District Court of the Second Circuit of Hawaii ("Maui District Court"). (Id., Ex. H.) On January 13, 2011, the Maui District Court entered a Judgment for Possession and a Writ of Possession in favor of OneWest.[3] (Id., Exs. I–J.) According to Defendants, on February 9, 2011, Plaintiff appealed the ejectment

_____

[3] Moving Defendants requested that the Court take judicial notice of their Verified Complaint for Ejectment and the Maui District Court orders. Pursuant to Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of papers filed in state court and of state court orders. See Porter v. Ollison, 620 F.3d 952, 955 n.1 (9th Cir. 2010); Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998). The state court documents are relevant to the present matter. Therefore, the Court grants the request for judicial notice.

action, which is currently pending in the Intermediate Court of Appeals of the State of Hawaii.  (See Doc. # 26 at 6.)

On June 6, 2011, Plaintiff, proceeding pro se, filed a Complaint in this Court against Defendants OneWest and MERS.  (Doc. # 1.)  On November 20, 2011, Plaintiff, represented by counsel, filed the present First Amended Complaint against Defendants OneWest, MERS, Stewart, and Richmond.  (Doc. # 24.)  The FAC asserts the following claims:

- Count I:   Injunctive Relief (FAC ¶¶ 44–52);

- Count II:   Wrongful Sale of Subject Property (id. ¶¶ 53–54);

- Count III:   Fraudulent Concealment–Tolling of Statute (id. ¶¶ 55–56);

- Count IV:   Unfair or Deceptive Acts or Practices (id. ¶¶ 57–68);

- Count V:   Truth in Lending Act Violations:  Loan Rescission and Recoupment (id. ¶¶ 69–85);

- Count VI:   Truth in Lending Act Violations:  Loan Damages (id. ¶¶ 86–88);

- Count VII:   Real Estate Settlement Procedures Act "RESPA" Violations (id.  ¶¶ 89–91);

- Count VIII:   Fraud (id. ¶¶ 92–100);

- Count IX:   Sherman Anti-Trust Act Violations (id.  ¶¶ 101–113);

- Count X: Hawaii Anti-Trust/Anti-Monopoly Acts Violations (<u>id.</u> ¶¶ 114–117);
-
- Count XI: Failure to Act in Good Faith (<u>id.</u> ¶¶ 118–123);

- Count XII: Unjust Enrichment (<u>id.</u> ¶¶ 124–129);

- Count XIII: Mistake (<u>id.</u> ¶¶ 130–131);

- Count XIV: Hawaii Bureau of Conveyance Regulations Violations (<u>id.</u> ¶¶ 132–138);

- Count XV: Improper Restrictions Resulting from Securitization Leaves Note and Mortgage Unenforceable (<u>id.</u> ¶¶ 139–146);

- Count XVI: Wrongful Conversion of Note – Mortgagor Never Consented to Securitization (<u>id.</u> ¶¶ 147–152);

- Count XVII: Breach of Contract (<u>id.</u> ¶¶ 153–158);

- Count XVIII: Conversion (<u>id.</u> ¶¶ 159–162).

On December 23, 2011, Defendants OneWest and MERS filed the instant Motion to Dismiss First Amended Complaint. ("Mot.," Doc. # 26.) On February 13, 2012, Defendants entered a Notice of No Opposition Having Been Filed to their Motion to Dismiss after Plaintiff failed to submit an opposition by February 6, 2012, the filing deadline. (Doc. # 35.) On February 17, 2012, Plaintiff's counsel informed this Court that counsel's wife, who also acted as his sole legal assistant, had been in a car accident on February 6, 2012, and that

consequently, counsel was unable to timely file an Opposition. In light of counsel's personal circumstances, the Court continued the hearing and gave Plaintiff until March 28, 2012 to file an Opposition.

On March 28, 2012, Plaintiff filed her Opposition to the Motion. ("Opp'n," Doc. # 38.) In the Opposition, Plaintiff's counsel explained that the FAC had been erroneously entwined with a filing from another case, "and the wrong Amended Complaint was filed in this case." (Id. at 4.) Plaintiff's counsel further explained that it was not until February 27, 2012 that he "was made aware by the Court that his pleadings were incorrect." (Id.) Plaintiff attached the "correct" FAC to the Opposition, requesting that the Court "allow and consider the pleading to be superseded by the attached FAC." (Id. at 5.)

The Court declines Plaintiff's request. A request for leave to amend should have been brought by a separation motion, not in an opposition to Defendants' motion to dismiss. Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course within: (a) 21 days after serving it, or (B) 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. However, where, as here, a party has already amended its pleading once as a matter of course, any subsequent amendment is permitted "only with the opposing party's written

consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Since Plaintiff has neither

properly requested nor received leave from the Court to amend her Complaint, the

FAC remains the operative complaint.

On March 4, 2012, Defendants submitted a Reply in further support of

their Motion to Dismiss.  (Doc. # 39.)

STANDARD OF REVIEW

I.      Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a

claim upon which relief can be granted.  Review is limited to the contents of the

complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir.

1994).  A complaint may be dismissed as a matter of law for one of two reasons:

"(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable

legal claim."  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.

1984) (citation omitted).  "A trial court may dismiss a claim sua sponte under

[Rule] 12(b)(6).  Such a dismissal may be made without notice where the claimant

cannot possibly win relief."  Omar v. Sea–Land Serv., Inc., 813 F.2d 986, 991 (9th

Cir. 1987).  Allegations of fact in the complaint must be taken as true and

8

construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd. v.

Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In providing grounds for relief, however, a plaintiff must do more than recite the

formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v.

Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations

without more are insufficient to defeat a motion to dismiss for failure to state a

claim.") (citation omitted).  "The tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions," and

courts "are not bound to accept as true a legal conclusion couched as a factual

allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations

and citations omitted).  Thus, "bare assertions amounting to nothing more than a

formulaic recitation of the elements" of a claim "are not entitled to an assumption

of truth."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he

non-conclusory 'factual content,' and reasonable inferences from that content,

must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal

quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.   See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  Id. at 586.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

II.      Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that each allegation "be simple, concise, and direct."   Fed. R. Civ. P. 8(d)(1).  A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed for failure to satisfy Rule 8.  Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 1969)); see also McHenry v. Renne, 84 F.3d 1172, 1180 (9th

Cir. 1996) ("Something labeled a complaint but written ..., prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [Rule 8] may be dismissed with prejudice[.]").

Put slightly differently, a complaint may be dismissed for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the wrongs they have allegedly committed. See McHenry, 84 F.3d at 1178–80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); cf. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1105 n. 4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 129 S. Ct. at 1949 (citations and quotations omitted). "The propriety of dismissal for failure to comply with Rule 8 does not

depend on whether the complaint is wholly without merit." <u>McHenry</u>, 84 F.3d at 1179.

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 129 S. Ct. at 1950. Legal conclusions must be supported by factual allegations. <u>Id.</u> "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u>

III.     <u>Federal Rule of Civil Procedure 9(b)</u>

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Ninth Circuit law, "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc), <u>superseded on other grounds by</u> 15 U.S.C. § 78u-4.

In their pleadings, plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. <u>Id.</u> at 1548 (quoting <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989)). "[T]he circumstances constituting the

alleged fraud [must] 'be specific enough to give defendants notice of the particular

misconduct . . . so that they can defend against the charge and not just deny that

they have done anything wrong.'" <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124

(9th Cir. 2009) (quoting <u>Bly-Magee v. California</u>, 236 F.3d 10104, 1019 (9th Cir.

2001)); <u>see also</u> <u>Moore</u>, 885 F.2d at 540 (finding that Rule 9(b) requires a plaintiff

to attribute particular fraudulent statements or acts to individual defendants).

However, "[m]alice, intent, knowledge, and other conditions of a person's mind

may be alleged generally." Fed. R. Civ. P. 9(b); <u>see also</u> <u>In re GlenFed, Inc. Sec.</u>

<u>Litig.</u>, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply

by saying that scienter existed."); <u>Walling v. Beverly Enter.</u>, 476 F.2d 393, 397

(9th Cir. 1973) (finding that Rule 9(b) "only requires the identification of the

circumstances constituting fraud so that the defendant can prepare an adequate

answer from the allegations" (citations omitted)).

      A motion to dismiss for failure to plead with particularity is the

functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state

a claim. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003). In

considering a motion to dismiss, the court is not deciding the issue of "whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)

<u>overruled on other grounds by</u> <u>Davis v. Scherer</u>, 468 U.S. 183 (1984).

DISCUSSION

Moving Defendants contend that the FAC is based on conclusory and

unsupported allegations and therefore should be dismissed for failure to comply

with Federal Rule of Civil Procedure 12(b)(6).[4]  This Court agrees.

I.    <u>Role of MERS</u>

It appears that Plaintiff's allegations are based in part on her

misconception of MERS' role in the mortgage lending process.  For example,

Plaintiff alleges that IndyMac or OneWest "sold and/or transferred the Note and

Mortgage to, or through 'MERS' without proper endorsement or assignments

during the life of the loan, resulting in said Defendants not having the right and

interest to foreclose upon the subject property."  (FAC ¶ 33.)  Plaintiff further

---

[4] The Court notes that Plaintiff's FAC is a boilerplate complaint alleging many of the same causes of action that she has alleged in previous actions against mortgage lenders and that have been alleged in numerous actions by other pro se plaintiffs before this Court.  This Court has dismissed these complaints for failure to state a claim, explaining in detail the complaints' deficiencies.  <u>See, e.g.</u>, <u>Vertido v. GMAC Mortg. Corp.</u>, 2012 WL 139212 (D. Haw. Jan. 17, 2012); <u>Hoilien v. Bank of Am.</u>, 2011 WL 3494523 (D. Haw. Aug. 10, 2011); <u>Hoilien v. Bank of Am.</u>, 2011 WL 2518731 (D. Haw. June 23, 2011); <u>Phillips v. Bank of Am.</u>, 2011 WL 240813 (D. Haw. Jan. 21, 2011).

alleges that "none of said Defendants [IndyMac, OneWest, or MERS] have Plaintiff's original Note and as a consequence, they have no authority to enforce the provisions of the Mortgage and Note against Plaintiff, or Plaintiff's property." (Id. ¶ 34.)

As a preliminary matter, the Court notes that MERS acted solely as a nominee for the Lenders. (See RJN, Ex. C.) Moreover, MERS assigned its interest in the Mortgage to OneWest prior to OneWest's initiation of foreclosure proceedings on January 10, 2010. (See id., Exs. D, E.) As such, MERS did not have any role in the foreclosure process, which was conducted solely by OneWest. (See id., Ex. F.) Therefore, Plaintiff's assertions that MERS attempted to enforce provisions of the Mortgage or Note are wholly without merit.

Further, insofar as Plaintiff's claims are based on allegations that MERS' involvement invalidly split the Note and Mortgage, the Court concludes that these contentions are not tenable in light of the Ninth Circuit's decision in Cervantes v. Countrywide Home Loans, which expressly rejected the "note-splitting" theory and upheld the MERS system. See 656 F.3d 1034, 1044 (9th Cir. 2011) ("Even if we were to accept the plaintiffs' premises that MERS is a sham beneficiary and the note is split from the deed, we would reject the plaintiffs'

conclusion that, as a necessary consequence, no party has the power to foreclose."); see also Velasco v. Sec. Nat'l Mortg. Co., --- F. Supp. 2d ---, 2011 WL 4899935, at *11 (D. Haw. Oct. 14, 2011) ("[A]ny argument that MERS lacked the authority to assign its right to foreclose and sell the property based on its status as 'nominee' cannot stand in light of Cervantes."); Johnson v. Homecomings Fin., 2011 WL 4373975, at *7 (S.D. Cal. Sept. 20, 2011) (rejecting the note-splitting theory as a "discredited theory.").[5]

Accordingly, Plaintiff's allegations that the foreclosure was improper solely because of MERS' involvement are not viable.

---

[5] In addition to the Ninth Circuit's instruction on MERS, this Court has previously instructed Plaintiff on the insufficiency of bald assertions about MERS. For example, in a 2011 order in another case filed by Plaintiff against mortgage lenders, this Court noted:

Plaintiff appears to be alleging that MERS may not foreclose, or has improperly foreclosed, because it is not a holder of the note. As it stands, however, Plaintiff's Count XII makes little sense because standing is a requirement for a plaintiff in order to proceed in a lawsuit, not one that a defendant must establish. Further, Plaintiff's statement that MERS has no legal standing to foreclose is a conclusory allegation insufficient to state a claim upon which relief may be granted.

Hoilien v. Bank of Am., 2011 WL 3494523, at *11 (D. Haw. Aug. 10, 2011); see also Hoilien v. Bank of Am., 2011 WL 251831, at *13 (D. Haw. June 23, 2011); Hoilien v. Bank of Am., 2011 WL 976699, at *14 (D. Haw. Mar. 17, 2011).

II.     Count I: Injunctive Relief

        Plaintiff seeks an injunction to enjoin OneWest from selling,

transferring, or "denying Plaintiff possession" of the Subject Property during the

pendency of the action.  (FAC ¶ 45.)

        As an initial matter, to the extent that Plaintiff seeks a preliminary

injunction, she may not do so in a complaint.  Pursuant to Local Rule 10.2, an

"application for a temporary restraining order or preliminary injunction shall be

made in a document separate from the complaint."

        Moreover, the Court follows the well-settled rule that a claim for

injunctive relief cannot stand as an independent cause of action.  See, e.g., Long v.

JP Morgan Chase Bank, Nat'l Ass'n, --- F. Supp. 2d ---, 2012 WL 220791, at * 10

(D. Haw. Jan. 25, 2012) (explaining that "injunctive relief standing alone is not a

cause of action"); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201

(E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of

action . . . .  A pleading can . . . request injunctive relief in connection with a

substantive claim, but a separately pled claim or cause of action for injunctive

relief is inappropriate.") (internal quotations and citations omitted); Plan Pros, Inc.

v. Zych, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) (stating that "no

independent cause of action for injunction exists"); Motley v. Homecomings Fin.,

LLC, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same); see also Kendall v. Visa

U.S.A., Inc., 518 F.3d 1042, 1051 (9th Cir. 2008).  Injunctive relief may be

available if Plaintiff prevails—or satisfies requirements for such relief under Rule

65 of the Federal Rules of Civil Procedure—on an independent cause of action.

The Court therefore **DISMISSES** Count I.

III.    Count II:  Wrongful Sale of Subject Property

Count II alleges that Defendants "wrongfully and without legal right"

conducted a non-judicial foreclosure of the Subject Property.  (FAC ¶ 54.)

As a preliminary matter, it is unclear to the Court specifically what cause of action

Plaintiff is asserting in this Count.  Plaintiff fails to cite any relevant statute or law

pursuant to which Defendants' alleged behavior is prohibited.  Neither Defendants

nor the Court are required to speculate as to which law Plaintiff is suing under or

how Defendants violated such law.  Vague allegations containing mere labels and

conclusions are insufficient to survive a motion to dismiss.  See Twombly, 550

U.S. at 555.  On these grounds alone, Plaintiff's claim for wrongful sale fails.

Additionally, Plaintiff has alleged no facts to support her allegation

that the sale was wrongful.   Plaintiffs have not identified any procedural errors in

the foreclosure process itself that would make the foreclosure "wrongful."  See

Doran v. Wells Fargo Bank, 2011 WL 5239738, at *9 (D. Haw. Oct. 31, 2011)

18

(indicating that a "wrongful foreclosure" claim failed under Hawaii law because the notice of foreclosure was procedurally proper under HRS Ch. 667). Moreover, although Hawaii has not specifically recognized a common law wrongful foreclosure cause of action, "[s]ubstantive wrongful foreclosure claims [in other jurisdictions] typically are available after foreclosure and are premised on allegations that the borrower was not in default, or on procedural issues that resulted in damages to the borrower." Cervantes, 656 F.3d at 1043 (9th Cir. 2011). Plaintiff does not claim that she was not in default on the Mortgage, nor does she identify any procedural issues that resulted in damages to her. She merely alleges that Defendants initiated and conducted a non-judicial foreclosure of Plaintiff's property, and sold the property to themselves at the foreclosure sale. (FAC ¶ 54.) This is not wrongful in light of the fact that OneWest had a legal right under the Mortgage to enforce its foreclosure rights in the event of default.[6] (See Doc. # 29, Ex. C.) Accordingly, the Court **DISMISSES** Count II.

---

[6] The Mortgage explicitly provides, "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property . . . ." (emphasis added) (Doc. # 29, Ex. C, at 2.)

IV.    Count IV: Unfair or Deceptive Acts or Practices

Plaintiff claims that IndyMac, OneWest, and MERS violated Hawaii Revised Statutes ("H.R.S.") section 480-2(a) by engaging in unfair or deceptive acts or practices ("UDAP").[7]  (FAC ¶¶ 61, 64, 68.)  Section 480-2(a) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"   Plaintiff makes six allegations that comprise the basis of her UDAP claim: (1) "[t]argeting financially unsophisticated and otherwise vulnerable consumers for inappropriate crew products"; (2) "[f]ailing to adequately disclose the true costs and risks of the subject loan and its inappropriateness for Plaintiff"; (3) "[m]aking a refinance loan that resulted in little net economic benefit to Plaintiff with the primary objective of general fees"; (4) "[m]aking the loan based on the value of the collateral, without regard to Plaintiff [sic] ability to repay the loan"; (5) [f]ailing to provide Plaintiff with a timely Good Faith Estimate "GFE" and a fully executed Truth I [sic] Lending Disclosure Statement"; and (6) "[a]ttempting to deprive Plaintiff of her legal right to cancel the loan."  (Id. ¶ 61.)

_____

[7] Plaintiff also asserts a violation of § 481A-3(a), but this statute is inapplicable to mortgage transactions.  See Cavaco v. Mortg. Elec. Registration Sys. Inc., 2011 WL 1565979, at *7 n.1 (D. Haw. Apr. 25, 2011).

As an initial matter, 12 C.F.R. § 560.2(b) preempts state claims predicated on TILA violations, including failures to make required disclosures. Kajitani v. Downey Sav. & Loan Assoc., F.A., 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008). Consequently, to the extent that Plaintiff's UDAP is based on an alleged failure to provide TILA disclosure documents, those claims are preempted by federal law.

Next, Plaintiff's UDAP claim is subject to a four-year statute of limitations, which starts to run at the time of a cause of action's accrual. Haw. Rev. Stat. § 480-24(a). Plaintiff's first five allegations in this Count occurred either prior to or at the time of the loan consummation. Because the loan was consummated on March 9, 2007, and because Plaintiff did not file her complaint until June 6, 2011, these claims are time-barred.

Finally, Plaintiff's sixth allegation does not satisfy the pleading requirements set forth in Rule 8. Plaintiff asserts that Defendants attempted to deprive Plaintiff of her legal right to cancel the loan but the allegations do not make clear what actions Defendants engaged in that allegedly deprived Plaintiff this right.[8] Because Plaintiff does not provide sufficient factual detail to support

---

[8]As the Court previously explained, Plaintiff cannot base her claim on either occurrences that happened prior to June 6, 2007, or TILA violations, including
(continued...)

this conclusory allegation, Plaintiff has failed to state a valid UDAP claim.  <u>See</u>
<u>Iqbal</u>, 129 S. Ct. at 1949.

Accordingly, the Court **DISMISSES** Count IV.

V.      Count V: Truth in Lending Act Violations: Loan Rescission and
        Recoupment

Plaintiff asserts that because IndyMac failed to provide her with
disclosure documents required by TILA, Plaintiff is entitled to rescission,
reasonable attorney's fees and costs, and recoupment.  (FAC ¶¶ 74, 77–84.)

TILA provides a borrower with the right to rescind a loan transaction
"until midnight of the third business day following the consummation of the
transaction or the delivery of the information and rescission forms required under
this section . . . , whichever is later . . . ."  15 U.S.C. § 1635(a).  However, this right
to rescind expires "three years after the date of consummation of the transaction or
upon the sale of the property, whichever occurs first, notwithstanding the fact that
the information and forms required under this section or any other disclosures
required under this part have not been delivered to the obligor . . . ."  <u>Id.</u> § 1635(f).
Because § 1635(f) is an absolute statute of repose, it

_____

[8](...continued)
Defendants' alleged failure to provide her with a Notice of Right to Cancel.

is not subject to equitable tolling.  See Caraang v. PNC Mortg., 795 F. Supp. 2d 1098, 1113 (D. Haw. 2011).

Here, Plaintiff entered into the loan transaction on March 9, 2007, but did not file her original complaint until over four years later, on June 6, 2011. Consequently, her rescission claim is time-barred.

Plaintiff tries to overcome the three-year absolute bar to bringing a TILA rescission claim by asserting a right to recoupment pursuant to § 1640(a) and (e).  (FAC ¶ 84.)  This claim fails for two reasons.  First, § 1640 only provides for a recoupment defense, not a cause of action.  See Henderson v. GMAC Mortg. Corp., 347 Fed. Appx. 299, 302 (9th Cir. 2009) (citing Beach v. Ocwen Fed. Bank, 523 U.S. 410, 415 (1998)) (explaining that because the borrowers initiated the action, they could not succeed under a theory of recoupment).[9]  Second, rescission in the nature of recoupment is subject to the same three-year statute of repose as a claim for rescission.  See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 418–19 (1998) ("[TILA] permits no federal right to rescind, defensively or otherwise, after the 3-years period of § 1635(f) has run.").

---

[9]Although not published, Henderson was issued after January 1, 2007, and may be cited pursuant to Federal Rule of Appellate Procedure 32.1(a) and Ninth Circuit Rule 36-3(b).

Accordingly, the Court **DISMISSES** Count V on the ground that these claims are time barred.

VI.     Counts III and VI: Fraudulent Concealment–Tolling of Statute; Truth in Lending Act Violations: Loan Damages[10]

Plaintiff claims that she is entitled to damages pursuant to 15 U.S.C. §§ 1635(g) and 1640 for Defendants' alleged failure to allow rescission and failure to comply with TILA's requirements.  (FAC ¶¶ 87–88.)

Section 1635(g) allows a court to provide relief for violations relating to the right to rescind.  As explained above, however, Plaintiff's rescission claim is time-barred.  She therefore cannot state a valid claim under § 1635(g).  Section 1640(a)(1) provides a cause of action for damages from breaches of TILA.  Section 1640, however, is governed by the one-year statute of limitations of § 1640(e).  Plaintiff asserts that because of the fraudulent misrepresentation and concealment of the terms of Plaintiff's loan and mortgage, the statute of limitations on Plaintiff's TILA claim should be equitably tolled.  (FAC ¶¶ 55–56.)

_____

[10] Count III of Plaintiff's FAC alleges "Fraudulent Concealment—Tolling of Statute."  Equitable tolling, however, is not an independent cause of action; it is a doctrine that serves to toll a statute of limitations that would otherwise bar a plaintiff from bringing a cause of action.  See King v. California, 784 F.2d 910, 915 (9th Cir. 1986).  Thus, the Court reads Plaintiff's third Count requesting tolling of TILA's statute of limitations in conjunction with Plaintiff's claim for TILA damages.

As a general matter, "[e]quitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pac. Bell, 202 F.3d 1170, 1178 (9th Cir. 2000). For TILA damages claims, equitable tolling may apply to suspend the limitations period "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." King v. California, 784 F.2d 910, 915 (9th Cir. 1986). However, equitable tolling does not apply if a plaintiff does not allege facts demonstrating that discovery of the purported TILA violation would not have been possible with reasonable diligence. Hubbard v. Fid. Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996) (holding that equitable tolling did not apply where "nothing prevented [the plaintiff] from comparing the loan contract, Fidelity's initial disclosures, and TILA's statutory and regulatory requirements."); see also Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009) (construing Hubbard as establishing that "the mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations"). Further, where the basis for equitable tolling is fraudulent concealment, the circumstances constituting fraud must be pled with particularity pursuant to Rule 9(b). See 389 Orange St. Partners v. Arnold, 179 F.3d 656, 662 (9th Cir. 1999).

Here, although Plaintiff has alleged that IndyMac failed to provide required TILA disclosures, Plaintiff has not asserted any facts to support the conclusion that, despite her best diligence, Plaintiff could not have discovered the alleged TILA violations. As such, Plaintiff has not alleged a basis for tolling the limitations period set forth in the § 1640(e).

For the reasons set forth above, the Court **DISMISSES** Counts III and VI.

VII. Count VII: Real Estate Settlement Procedures Act (RESPA) Violations

Plaintiff alleges that she did not receive a Good Faith Estimate in violation of RESPA requirements. (FAC ¶ 90.) However, no private right of action exists under RESPA for such a violation. Araki v. One West Bank FSB, 2010 WL 5625969, at *8 (D. Haw. Sept. 8, 2010) (citing Collins v. FMHA-USDA, 105 F.3d 1366, 1367 (11th Cir. 1997) ("[T]here is no private civil action for a violation of 12 U.S.C. § 2604(c), or any regulations relating to it.")); see also Palestini v. Homecomings Fin., LLC, 2010 WL 3339459, at *4 (S.D. Cal. Aug. 23, 2010) ("[T]here is no private right of action under [§§ 2603–04] for Defendants' alleged failure to provide accurate disclosures, good faith estimates, or settlement statements."); Pressman v. Meridian Mortg. Co., 334 F. Supp. 2d 1236, 1242 n.4 (D. Haw. 2004). Accordingly, the Court **DISMISSES** Count VII.

VIII.  Count VIII: Fraud

As the basis for her fraud claim against IndyMac, Plaintiff asserts that

IndyMac falsely evaluated Plaintiff's income and falsely represented the true costs

and risks of the loan, and "the nature and extent of the documents."[11]  (FAC

¶¶ 93–95.)

Plaintiff's allegations of fraud do not meet Rule 9(b)'s heightened

pleading standards, which require a pleading to "identify the who, what, when,

where and how of the misconduct charged, as well as what is false or misleading

about [the purportedly fraudulent] statement, and why it is false."  Cafasso ex rel.

United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)

(internal quotation marks omitted).  In her FAC, Plaintiff does not identify what

the allegedly false or misleading representations were, when and where they were

made, who made these representations, or why they were false or misleading.

Plaintiff offers only vague allegations of false evaluations or representations and

_____

[11] Although Plaintiff's allegations of fraud are not against the Moving
Defendants, the Court addresses this issue sua sponte because Plaintiff alleges that
the Moving Defendants "are subject to the Mortgage and Note violations of all of
its predecessors and said violations serve to bar said Defendants from taking any
action against Plaintiff and/or the 'property' . . . ." (FAC ¶ 37.)  Plaintiff further
alleges that the Moving Defendants "knew or should have known" of IndyMac's
alleged violations.  (FAC ¶ 38.)  These bare assertions are not entitled to an
assumption of truth.  See Iqbal, 129 S. Ct. at 1951.  Moreover, the underlying fraud
allegations against IndyMac do not state a claim for relief.

has therefore failed to allege with sufficient particularity the elements of a claim for fraud.   <u>In re GlenFed</u>, 42 F.3d at 1548.

Accordingly, the Court **DISMISSES** Count VIII.

IX.   <u>Antitrust Violations</u>

a.   <u>Count IX: Sherman Anti-Trust Act Violations</u>

Count IX alleges a violation of the Sherman Antitrust Act, 15 U.S.C. § 2.  (FAC ¶ 112.)  Plaintiff alleges that Defendants "engaged in predatory conduct and anti-competitive conduct in an attempt to monopolize the mortgage lending and servicing market."  (<u>Id.</u> ¶ 102.)  Further, Plaintiff alleges that Defendants "worked to create the collapse of the mortgage market, which in turn created an economic collapse unprecedented since the Great Depression."  (<u>Id.</u> ¶ 110.) Plaintiff seeks monetary relief for this alleged violation, presumably pursuant to Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15.

Section 2 of the Sherman Act makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations."  <u>Id.</u> § 2.  Monopolization and attempted monopolization are the two traditional claims asserted under Section 2.  To state a claim for monopolization, the plaintiff must sufficiently allege: "'(1) the possession of

28

monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" John Doe 1 v. Abbott Labs., 571 F.3d 930, 933 n.3 (9th Cir. 2009) (quoting Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481 (1992)).

To state a claim for attempted monopolization, the plaintiff must allege: "'(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" Cascade Health Solutions v. PeaceHealth, 515 F.3d 883, 893 (9th Cir. 2008) (quoting Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993)).

An antitrust plaintiff must also demonstrate that the injury in question is "injury of the type the antitrust laws were intended to prevent." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). Indeed, the antitrust laws "were enacted for 'the protection of competition, not competitors.'" Id. at 488 (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1961)).

A plaintiff seeking damages pursuant to Section 4 of the Clayton Act must show causal antitrust injury, and, to obtain injunctive relief pursuant to Section 16 of the Clayton Act, a plaintiff must allege threatened antitrust injury.

Cargill, Inc. v. Monfort of Colo., Inc., 479 U.S. 104, 109–13 (1986). The purpose of the antitrust injury requirement is to "ensure[ ] that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief." Atlantic Richfield Co. v. USA Petroleum, Inc., 495 U.S. 328, 342 (1990). As such, "[t]o show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior [because] it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition." Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995) (citing Atlantic Richfield, 495 U.S. at 334); see also Cascade, 515 F.3d at 902 ("'Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.'") (quoting Brunswick, 429 U.S. at 489).

In addition to antitrust injury, antitrust plaintiffs must also properly allege a relevant market. See Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1044 (9th Cir. 2008) (finding that to state a claim under either Section 1 or

Section 2 of the Sherman Act, the plaintiff must sufficiently allege a relevant market).  The Ninth Circuit recently reaffirmed that a complaint may be dismissed under Rule 12(b)(6) if its relevant market definition is "facially unsustainable."  Id. at 1045 (citing Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436–37 (3d Cir. 1997)).  The relevant market includes both the product market and the geographic market.  Brown Shoe, 370 U.S. at 324; Newcal Indus., 513 F.3d at 1045 n.4.  As to the product market, it must "encompass the product at issue as well as all economic substitutes for the product."  Newcal Indus., 513 F.3d at 1045 (citing Brown Shoe, 370 U.S. at 325).  It must therefore include "the group of sellers or producers who have the 'actual or potential ability to deprive each other of significant levels of business.'"  Forsyth v. Humana, Inc., 114 F.3d 1467, 1476 (9th Cir. 1997) (quoting Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc ., 875 F.2d 1369, 1374 (9th Cir. 1989)); see also Brown Shoe, 370 U.S. at 325 ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.").  "In limited settings, however, the relevant product market may be narrowed beyond the boundaries of physical interchangeability and cross-price elasticity to account for identifiable submarkets or product clusters."  Thurman Indus., 875 F.2d at 1374 (citation omitted).  To establish the existence of a legally

cognizable submarket, "the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market."  Newcal Indus., 513 F.3d at 1045; see also Brown Shoe, 370 U.S. at 325 (listing several "practical indicia" of an economically distinct submarket).

Here, Plaintiff asserts that the relevant market is the "mortgage lending and servicing market" (FAC ¶ 113) but the complaint is utterly devoid of any explanation or elaboration to support this contention.  For example, the FAC does not contain any allegations concerning economic substitutes for the proposed product market, and it is entirely unclear to the Court why Plaintiff defined the relevant market in the way that they did.  Moreover, the FAC fails to specify a relevant geographic market.  As such, Plaintiff's relevant market definition is "facially unsustainable."  Newcal, 513 F.3d at 1044.

In addition, Plaintiff alleges no facts to indicate that Defendants engaged in any sort of predatory or anticompetitive conduct.  The Court cannot glean from Plaintiff's purely conclusory allegations that Defendants engaged in the type of conduct that the Sherman Act aims to prevent.  In fact, Plaintiff's allegations in this count sound more in fraud.  For example, Plaintiff alleges that Defendants "knew the scheme would cause a liquidity crisis that would devastate

Plaintiff's home value . . . . Defendants did not care because their plan was based on insider training [sic]" (FAC ¶ 106) and "[t]his massive fraudulent scheme was a disaster both foreseen by Defendants and waiting to happen" (id. ¶ 108). Such vague and sweeping assertions are woefully insufficient to state a claim for monopolization or attempted monopolization in violation of the Sherman Act.

The Supreme Court acknowledged, in a case involving an alleged Sherman Antitrust Act violation, that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." Associated Gen. Contractors of Cal., Inc. v. Cal. State Counsel of Carpenters, 459 U.S. 519, 528 n. 17; see also Twombly, 550 U.S. at 558 ("[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery . . . , but quite another to forget that proceeding to antitrust discovery can be expensive."); Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1046–47 (9th Cir. 2008) (concluding that the Supreme Court clarified antitrust pleading requirements in Twombly "because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case") (citing Twombly, 550 U.S. at 558–59). Because Plaintiff has provided nothing more than conclusory allegations in support of her antitrust claim, this claim must be dismissed.

b.    Count X: Hawaii Anti-Trust Act and Monopolization Act

Plaintiff attempts to state a claim pursuant to the Hawaii Antitrust Act (Haw. Rev. Stat. § 480-13), and the Hawaii Monopolization Act (Haw. Rev. Stat. § 480-9) by relying exclusively on the allegations set forth in Count IX for her alleged Sherman Act claim.  (FAC ¶ 115.)

The close relationship between federal antitrust law and Hawaii antitrust law has been well-established.  See, e.g., Robert's Hawaii Sch. Bus v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 881 n.29 (Haw. 1999) (noting the similarities between Section 2 of the Sherman Antitrust Act and Haw. Rev. Stat. § 480-9).  Indeed, the "[l]egislative history of Hawaii's antitrust law clearly indicates that the state laws are to be interpreted and construed in harmony with analogous federal antitrust laws."  Island Tobacco Co., Ltd. v. R. J. Reynolds Indus., Inc., 513 F. Supp. 726, 738 (D. Haw. 1981).  As with federal courts applying federal antitrust law, Hawaii courts require plaintiffs in antitrust proceedings to plead the "nature of the competition" to "ensure that the injury results from a competition-reducing aspect of the defendant's behavior."  Davis v. Four Seasons Hotel Ltd., 228 P.3d 303, 325 (Haw. 2010) (citing and relying on federal law).

As with Plaintiff's Sherman Act claim, Plaintiff's state antitrust claim is entirely conclusory and fails to set forth sufficient factual allegations to withstand a motion to dismiss. Broad assertions of state antitrust law violations of the type presented here simply do not give Defendants an opportunity to properly defend themselves. See Iqbal, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."); see also Pickern v. Pier 1 Imports, Inc., 457 F.3d 963, 968 (9th Cir. 2006) ("Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (internal quotation and citation omitted). Accordingly, the Court **DISMISSES** Count X.

X.    Count XI: Failure to Act in Good Faith

Plaintiff next alleges that IndyMac and/or DOE Defendants "owed Plaintiff a fiduciary duty to deal with her in good faith and in a fair manner" and that IndyMac and/or DOE Defendants breached that duty by failing to deal with Plaintiff in good faith and in a fair manner.[12]  (FAC ¶¶ 119–20.)

---

[12] Even though this claim is not alleged directly against Moving Defendants, the Court reviews this issue sua sponte insofar as Plaintiff attempts to impute liability for these alleged violations on the Moving Defendants.

It is well-established that absent "special circumstances," lenders generally owe no fiduciary duties to their borrowers. See, e.g., Isagawa v. Homestreet Bank, 769 F. Supp. 2d 1225, 1237 (D. Haw. 2011); Bank of Am. Corp. v. Superior Court, 130 Cal. Rptr. 3d 504, 510 n.7 (Cal. Ct. App. 2011) ("Absent special circumstances, a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender."); Jones v. Thompson, 338 S.W.3d 573, 583 (Tex. App. 2010) ("[N]o fiduciary relationship exists between a lender and a borrower."); Miller v. U.S. Bank of Wash., 865 P.2d 536, 543 (Wash. App. 1994) ("The general rule . . . is that a lender is not a fiduciary of its borrower."); Huntington Mortg. Co. v. DeBrota, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A lender does not owe a fiduciary duty to a borrower absent some special circumstances."); Ellipso, Inc. v. Mann, 541 F. Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature."); BHC Interim Funding, L.P. v. Finantra Capital, Inc., 283 F. Supp. 2d 968, 989 (S.D.N.Y. 2003) ("[T]he relationship between a lender and borrower is not fiduciary in nature.").

Plaintiff does not allege any facts to support a finding that there exists "special circumstances" that would trigger a fiduciary duty here. Merely stating that Defendants "owed Plaintiff a fiduciary duty to deal with her in good faith and

in a fair manner" is conclusory and insufficient to establish a fiduciary duty on the

part of the lender. Based on the facts alleged in the Complaint, this Court has no

reason to believe that Plaintiff's relationship with IndyMac or the Doe Defendants

was anything other than an ordinary, arm's-length, lender-borrower relationship.

Iqbal, 129 S. Ct. at 1949. Accordingly, the Court **DISMISSES** Count XI.

XI.    Count XII: Unjust Enrichment

Plaintiff alleges that she is entitled to restitution and attorney's fees

because IndyMac and/or DOE Defendants were unjustly enriched by "charging a

higher interest rate, fees, rebates, kickbacks, profits and gains from any resale of

mortgages and notes using Plaintiff's identity, credit score, appraisal and

reputation without consent, right, justification or excuse" and "through the receipt

of payment from third parties . . . ."[13] (FAC ¶¶ 126–29.)

The two elements of an unjust enrichment claim are that: (1) Plaintiff

has conferred a benefit upon Defendant, and (2) retention of that benefit would be

unjust. Porter v. Hu, 169 P.3d 994, 1007 (Haw. App. 2007). Unjust enrichment is

available only where there is "an absence of an adequate remedy at law." Id.

Thus, as a general rule, "[a]n action for unjust enrichment cannot lie in the face of

---

[13] As with the previous Count, the Court reaches this issue sua sponte insofar
as Plaintiff's theory of liability against the Moving Defendants is predicated on
IndyMac's purported wrongdoings.

an express contract."  Id. at 1006; see also AAA Haw., LLC v. Haw. Ins.

Consultants, Ltd., 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008) ("It is also

well settled in federal courts that equitable remedies are not available when an

express contract exists between the parties concerning the same subject matter.").

Plaintiff does not allege any facts demonstrating that she conferred a

benefit on IndyMac or any other Defendant.  Furthermore, an express contract

exists between IndyMac and Plaintiff, governing the rights and obligations of the

parties under the loan transaction.  (FAC ¶ 9.)  Plaintiff therefore cannot bring a

claim for unjust enrichment.  The Court therefore **DISMISSES** Count XII.

XII.    Count XIII: Mistake

Plaintiff alleges that if Defendants' actions were not fraudulent, then

"the underlying transaction was entered into based upon mutual mistake . . . ."

(FAC ¶ 131.)  Based on this purported wrongdoing, Plaintiff seeks actual damages,

including all costs paid to obtain the loan.  (Id.)

As with Plaintiff's fraud claim in Count VIII, Plaintiff's allegations of

mistake are insufficient to meet the rigorous requirements under Rule 9.  See

Fed. R. Civ. P.  9(b) (requiring a party to state with particularity the circumstances

constituting fraud or mistake).  Plaintiff's conclusory allegation that the parties

entered into the loan based upon mutual mistake is not sufficient to survive a

motion to dismiss.  Plaintiff utterly fails to assert any "particularized allegations of the circumstances" constituting mistake, such as the time, place, and nature of the alleged actions, and how each Defendant participated in the mistake.  See In re GlenFed, Inc. Sec. Litig., 42 F.3d at 1547–48.  Since Plaintiff has failed to state a claim based on mistake, the Court **DISMISSES** Count XIII.

XIII.  Count XIV: Hawaii Bureau of Conveyance Regulations/FDCPA Violations

Count XIV alleges a violation of both (1) Hawaii Bureau of Conveyance Regulations, and (2) the Federal Fair Debt Collection Procedures Act ("FDCPA"), 15 U.S.C. § 1692(e).

a.  Hawaii Bureau of Conveyances Regulations Violations

Plaintiff alleges that IndyMac's foreclosure of Plaintiff's real property violated Hawaii law, which allegedly provides that "before an entity would be entitled to receive a distribution from the sale of real property, their interest therein must have been recorded."  (FAC ¶ 133.)  To the extent that Plaintiff attempts to allege a violation of Hawaii state statutes governing the Bureau of Conveyances, Plaintiff fails to state a claim.

As a preliminary matter, the Court notes that Plaintiff fails to cite any provision of Hawaii law, statutory or otherwise, to support this allegation.  As

previously noted, neither Defendants nor the Court are required to speculate as to what law Plaintiff is suing under or how Defendants violated such law.

Moreover, the Court has not found any provision of Hawaii law that requires an entity to record its interest in a property before receiving a distribution from the sale. Indeed, recordation of a conveyance is only relevant for the purpose of providing notice to subsequent bona fide purchasers of the property. (See Haw. Rev. Stat. § 502-8.)[14] Because Plaintiff is not a subsequent bona fide purchaser of the Subject Property, this provision does not apply.

Accordingly, the Court finds that Plaintiff fails to state a claim for a violation of Hawaii state law with respect to recordation of a conveyance.

b. Federal Debt Collections Practices Act

Although not titled as such, Count XIV appears to also allege a claim for violation of the FDCPA. Plaintiff alleges that IndyMac's

> act of pursuing a non-judicial foreclosure action without the requisite legal title, while falsely stating that it had such title, and while lacking the right to engage in trust business in Hawaii, constitutes a false, deceptive or misleading representations or means in connection with the collection of a

---

[14] The provision provides, "Every such conveyance not so recorded is void as against any subsequent purchaser, lessee, or mortgagee, in good faith and for a valuable consideration, not having actual notice of the conveyance of the same real estate . . . ." (Haw. Rev. Stat. § 502-8.)

debt, in violation of the Federal Fair Debt Collection Procedures [sic] Act . . . .

(FAC ¶ 134.)

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To be liable for a violation of the FDCPA, the defendant must, as a threshold requirement, be a "debt collector" within the meaning of the FDCPA. <u>Heintz v. Jenkins</u>, 514 U.S. 291, 294 (1995). The FDCPA defines a "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . . The term does not include—
>
> > (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor . . . .

15 U.S.C. § 1692(a)(6).

Plaintiff alleges that Defendants are "debt collectors" because "they regularly use instrumentalities of interstate commerce, and the mails, in attempting to collect, directly, or indirectly, debts owed or due or asserted to be owed or due

to another . . . ." (FAC ¶ 135.) This conclusory assertion merely restates the definition of "debt collector" provided in the FDCPA. Plaintiff alleges no facts to suggest that Defendants are in fact "debt collectors" as contemplated by the FDCPA. This proposition is not self-evident as many district courts across the country have held that mortgage servicing companies are not debt collectors liable under the FDCPA. See e.g., Williams v. Countrywide, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007) ("[L]enders and mortgage companies are not 'debt collectors' within the meaning of the FDCPA."); Hulse v. Ocwen Fed Bank FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (noting that the "activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA). Indeed, one important factor in determining whether a "mortgage servicing company" is a "debt collector" is whether "the debt was [ ] in default at the time it was assigned." Caraang, 795 F. Supp. 2d at 1123 (quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)). Because the FAC alleges no facts to suggest that any of the Defendants are "debt collectors," this claim fails. Accordingly. the Court **DISMISSES** Count XIV.

XIV. Improper Securitization of the Loan

Counts XV and XVI both appear to arise from the securitization of Plaintiff's loan.

a.      <u>Count XV: Improper Restrictions Making Note and Mortgage</u>
        <u>Unenforceable</u>

Count XV alleges that the securitization of the Mortgage via

Defendants' "Pooling Arrangement" imposed "improper restrictions . . . leav[ing]

the Note and Mortgage unenforceable."  (FAC ¶¶ 141, 145.)  Plaintiff alleges that

she "was neither informed of, nor asked to consent to the securitization of the

Mortgage" and that "[s]uch consent is required for changes pursuant to the terms of

the original Mortgage."  (<u>Id.</u> ¶ 146.)  Plaintiff lists a variety of restrictions that the

securitization process allegedly imposed on the Mortgage.[15]

Insofar as Count XV appears to allege wrongful securitization, the

Court finds that Plaintiff fails to state a claim.  This Court and others in the Ninth

Circuit have consistently rejected similar claims as having no statutory or common

law basis.  <u>See</u> <u>Menashe v. Bank of NY</u>, --- F. Supp. 2d ---, 2012 WL 397437, at

*18 (D. Haw. Feb. 6, 2012) (noting that "numerous courts in this Circuit have

---

[15] These restrictions allegedly include "[i]mposing restrictions to
modification required to avoid double taxation and make collection of payments by
the trust and payment to the investors a single pass through taxable event,"
"[i]mposing restrictions upon the number of Mortgages in the pool which may be
modified," and "[p]roviding a procedure for foreclosure but no procedure to
modify the loan as an alternate dispute resolution."  (FAC ¶ 144.)

likewise rejected that securitization of a mortgage loan provides the mortgagor a cause of action.").

Indeed, Plaintiff does not provide the Court with any legal authority for her claim, nor does Plaintiff point to any provision of the Note or Mortgage that prevents the lender from securitizing the loan or requires Plaintiff's consent prior to securitization.  To the contrary, the Note expressly provides, "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times <u>without prior notice to Borrower</u>."  (RJN, Ex. C ¶ 20 (emphasis added.)) Because Plaintiff does not allege facts indicating that Defendants' securitization of the loan was improper, Plaintiff fails to state a claim. Accordingly, the Court **DISMISSES** Count XV.

b.  <u>Count XVI:  "Wrongful Conversion of Note — Mortgagor Never Consented to Securitization"</u>

The allegations in Count XVI are similar to those set forth in Count XV.  Plaintiff alleges, "[t]he securitization is a conversion of the Mortgage rendering it null, void and unenforceable.  The consent required for changes to the Mortgage does not entail the right to convert the Mortgage into a security."  (FAC ¶ 147.)  Further, Count XVI alleges that "[t]he conversion of the Mortgage to

44

Mortgage backed securities improperly attempts to divide the Note from the Mortgage to make the Note a separately enforceable interest."  (Id. ¶ 151.)

Under Hawaii law, the elements of conversion are: "(1) [a] taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand."  Pourny v. Maui Police Dep't., Cnty. of Maui, 127 F. Supp. 2d 1129, 1146 (D. Haw. 2000) (citation omitted).

As discussed above, Defendants have an express contractual right to sell the Note or any portion thereof without prior notice to the Borrower.  (See RJN, Ex. C ¶ 20.)  Since Plaintiff's consent was not necessary, Plaintiff cannot satisfy the first element of conversion.  Moreover, insofar as Plaintiff attempts to allege conversion based on Defendants' allegedly improper division of the Note from the Mortgage (see FAC ¶ 151), the Court notes that the Ninth Circuit has expressly rejected this "note-splitting" theory, as discussed above.

For these reasons, the Court **DISMISSES** Count XVI.

XVI.  Count XVII: Breach of Contract

Plaintiff alleges that under the terms of her loan agreement with IndyMac, IndyMac agreed to loan Plaintiff $520,000.  (FAC ¶ 9.)  IndyMac was to

pay off Plaintiff's prior mortgage and then pay Plaintiff the remainder through an escrow account with Stewart and Richmond.  (Id. ¶¶ 7, 9.)  Plaintiff contends that IndyMac, Stewart, and Richmond are liable for breaching the loan agreement by not giving Plaintiff a copy of the executed agreement and associated documents and by not tendering the money to Plaintiff.  (Id. ¶ 157.)

To allege a breach of contract, "the complaint must, at minimum, cite the contractual provision allegedly violated.  Generalized allegations of a contractual breach are not sufficient."  Otani v. State Farm Fire & Cas. Co., 927 F. Supp. 1330, 1335 (D. Haw. 1996); see Menashe, --- F. Supp. 2d. --- , 2012 WL 397437, at *14 ("[A] breach of contract claim requires a plaintiff to identify (1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by the Defendant; (5) when and how the Defendant allegedly breached the contract; and (6) how Plaintiff was injured.").

Plaintiff has not alleged any facts to support a breach of contract claim against OneWest or MERS.  Indeed, Plaintiff has not even alleged the existence of a contract between her and either of the Moving Defendants, let alone establish a

breach of any such agreement. The only contract identified in the complaint is between her and IndyMac. Since the Moving Defendants were not parties to any contract with Plaintiff, the Court **DISMISSES** Count XVII as to those Defendants.

XVII:   Count XVIII: Conversion

Plaintiff asserts that IndyMac, OneWest, Stewart, and Richmond are liable for conversion of loan funds that Plaintiff allegedly never received. (FAC ¶¶ 160–61.) As outlined above, the elements of a conversion claim are: "(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand." Tsuru v. Bayer, 25 Haw. 693, 1920 WL 830, at * 2 (Haw. Ter. 1920); see also Restatement (Second) of Torts § 222A; Pourny, 127 F. Supp. 2d at 1146. Since conversion is an intentional tort, proof of "a constructive or actual intent to injure" is required to establish liability. See Brooks v. Dana Nance & Co., 153 P.3d 1091, 1100 (2007) (citing Iddings v. Mee-Lee, 919 P.2d 263, 271 (1996) ("[T]he commission of an intentional tort includes a constructive or actual intent to injure.")).

With regard to Plaintiff's claim that OneWest is liable for conversion, Plaintiff does not allege any of the requisite elements of conversion. Plaintiff does

not allege that OneWest is a party to the loan transaction, that OneWest allegedly assumed ownership of and subsequently illegally used or abused Plaintiff's money, or that OneWest retained Plaintiff's money after Plaintiff requested its return. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Count XVIII.

XVIII: <u>Leave to Amend</u>

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires." "[R]equests for leave should be granted with extreme liberality." <u>Moss</u>, 572 F.3d at 792. "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment." <u>Id.</u> In determining whether to grant leave to amend, courts consider factors including: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of amendment.'" <u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981, 1007 (9th Cir. 2009) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where

plaintiff has previously amended the complaint.'"  Cafasso, 637 F.3d at 1058

(quoting Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

1989)).

        The Court grants Plaintiff leave to file a second amended complaint

by no later than May 4, 2012.  However, Plaintiff is not granted leave to amend

Counts I, V, and VII because those claims cannot be cured by further amendment.

See Zucco Partners, 552 F.3d at 1007.  Additionally, Plaintiff may not add any new

parties, new legal theories, or other new claims in her amended complaint.  Failure

to timely file an amended pleading and to cure the pleading deficiencies identified

above will result in dismissal of this action with prejudice.  The Court cautions

Plaintiff that this will be Plaintiff's final opportunity to amend.  Plaintiff is advised

that any amended complaint must clearly identify the specific causes of action

alleged and the factual allegations upon which those claims are based.

        Further, the Court orders counsel for both parties to meet and confer

to address those matters as discussed at the hearing.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Moving

Defendants' Motion to Dismiss, **DISMISSES** Counts I, V, and VII, and

**DISMISSES** all remaining claims **WITHOUT PREJUDICE**.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 19, 2012

_____
David Alan Ezra
United States District Judge

Hoilien v. OneWest Bank, FSB et al., Cv. No. 11-00357 DAE-RLP; ORDER: (1)
GRANTING DEFENDANTS' MOTION TO DISMISS AND (2) GRANTING
PLAINTIFF LEAVE TO AMEND